<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| SKIBOKY STORA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-5131(NLH) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MARGARET BRADY, et al., | : | |
| | : | |
| Defendants. | : | |

---

**APPEARANCES:**

Skiboky Stora
559 Vermont Street
Brooklyn, NY  11207
     Plaintiff <u>pro</u> <u>se</u>

**HILLMAN,** District Judge

     Plaintiff Skiboky Stora seeks to bring this action <u>in forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.

I.   <u>BACKGROUND</u>

     Plaintiff was a prisoner at the time he submitted his original Complaint [1], but he has since been released.  By Opinion and Order entered December 19, 2012, this Court granted Plaintiff leave to proceed <u>in forma pauperis</u>, dismissed the Complaint without prejudice, and granted Plaintiff leave to

apply to re-open if he could cure the deficiencies of his
Complaint.  Thereafter, Plaintiff submitted a proposed Amended
Complaint [7] and a Second Amended Complaint [9].  By Opinion
and Order [14, 10], previously entered, this Court screened the
Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2).
This Court accepted Plaintiff's allegations as true for purposes
of screening the Second Amended Complaint, summarizing the
factual allegations and construing the claims as follows:

> Plaintiff states that he resides in Brooklyn, New
> York.  He alleges that he was in Atlantic City, New
> Jersey on May 16, 2012, when he was brought by
> emergency medical personnel from his hotel to the
> Atlanticare Regional Medical Center in Atlantic City.
> Plaintiff does not describe the nature of his medical
> emergency, but alleges that he was immediately
> discharged.  He states that Defendant Nurse Margaret
> Brady and an Atlanticare security guard both started
> pulling his arms to get him out of the hospital while
> he was screaming in pain for them to stop.  Plaintiff
> asserts that Nurse Brady hit him in the chest, causing
> him to fall on a bed.  He claims that Defendant Nurse
> Brady then called the police, telling them that
> Plaintiff had assaulted her.
>
> Plaintiff states that Defendant Officers Kevin
> Burrows and Robert Nawroc, both of the Atlantic City
> Police Department, responded to the call and that
> Defendant Officer Burrows told Defendant Officer
> Nawroc to arrest Plaintiff for assault on Nurse Brady.
> Plaintiff states that he told the officers that there
> was a camera that would reveal Nurse Brady's attack on
> him, and alleges that he was bruised as a result of
> Nurse Brady hitting him, but that the officers refused
> to take Plaintiff's complaint against Nurse Brady.
>
> Plaintiff contends that the officers falsely
> arrested him and forced medical treatment on him.
> [FN3]  He states that he was confined for 132 days
> following his arrest, but does not describe the

2

> resolution of the charges against him.  He seeks
> damages in the amount of five million dollars for
> alleged violations of his rights, including,
> specifically:  false arrest, refusal to take his
> complaint against Nurse Brady, filing a false police
> report stating that swelling was evident on Nurse
> Brady, and for discrimination by the police officers.
> ...  He names as Defendants Nurse Margaret Brady,
> Atlanticare Regional Medical Center, Officer Kevin
> Burrows, Officer Robert Nawroc, and the Atlantic City
> Police Department.

(Opinion [14] at 2-4.)  In its prior Order [10], this Court

dismissed with prejudice the claims asserted against Defendant

Officers Burrows and Nawroc for false arrest, making false

statements in a police report, and failure to investigate.  This

Court dismissed all remaining claims without prejudice, and

granted Plaintiff leave to file an application to re-open and a

proposed third amended complaint addressing the deficiencies of

the Second Amended Complaint "solely with respect to those

claims dismissed without prejudice."  The Order further provided

that no additional opportunities to amend would be granted.

Plaintiff has submitted a proposed Third Amended Complaint,

and this Court has re-opened this matter for purposes of

screening the Third Amended Complaint pursuant to 28 U.S.C.

§ 1915(e)(2).  In addition to making new factual allegations,

Plaintiff has, contrary to the terms of this Court's prior Order

[10], reasserted the claims dismissed with prejudice and has

asserted new claims.  More specifically, Plaintiff adds the

following facts to his description of the events of May 16,

3

2012:  he alleges that Officer Nawroc used a racial epithet in talking with him at the time of the arrest (an additional fact in support of the previously-dismissed equal protection claim); he alleges that Officers Nawroc and Brady violently assaulted him without probable cause (a new fourth amendment claim); he alleges that the officers did not advise him of his Miranda rights (a new claim); and he asserts new state-law tort claims against all defendants for malicious prosecution, assault and battery, negligence, and tortious infliction of emotional distress.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

As this Court has previously advised Plaintiff, every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do ... .  Factual allegations must be enough to

raise a right to relief above the speculative level
... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)
(citations omitted).

That is, a complaint must assert "enough facts to state a
claim to relief that is plausible on its face."  Id. at 570.  "A
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550
U.S. at 556).  The determination of whether the factual
allegations plausibly give rise to an entitlement to relief is
"'a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense.'"  Bistrian v.
Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted).
Thus, a court is "not bound to accept as true a legal conclusion
couched as a factual allegation," and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678
(citations omitted).

In determining the sufficiency of a pro se complaint, the
Court must be mindful to accept its factual allegations as true,
see James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir.
2012), and to construe it liberally in favor of the plaintiff,

see Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

IV.   ANALYSIS

A.   The Equal Protection Claim

In an attempt to resurrect the previously-dismissed equal protection claim, Plaintiff alleges that Officer Nawroc used a racial epithet in talking with him at the time of the arrest.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its

jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)), cited in Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992), quoted in Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 109 (3d Cir. 2011).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor. Village of Arlington Heights, 429 U.S. at 265-66, cited in Community Services, Inc. v. Wind Gap. Mun. Authority, 421 F.3d 170, 177 (3d Cir. 2005).

This Court previously dismissed this claim because Plaintiff failed to allege any facts that would suggest that he

7

was treated differently from other persons who are similarly situated or that any Defendant intended to discriminate against him. While the new fact that Officer Nawroc used a racial epithet suggests racial animus, the use of racial epithets, alone, during the course of an arrest, without other conduct that deprives an arrestee of constitutional rights, does not amount to an equal protection violation. See, e.g., Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999), cited in Salley v. PA Dept. of Corr., 181 F.App'x 258, 266 (3d Cir. 2006). Moreover, Plaintiff still has pleaded no facts that suggest that he was treated differently from other persons who are similarly situated, that is, that he was arrested where other individuals typically are not arrested, when police have received a complaint of assault that is corroborated by another witness. This claim will be dismissed with prejudice.

B.  The Excessive Force Claim

Plaintiff asserts that Officers Nawroc and Brady violently assaulted him without probable cause and, alternately, that they used excessive force in arresting him, in violation of the Fourth Amendment.

The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated."

8

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Brower v. County of Inyo, 489 U.S. 593, 599 (1989), cited in Lamont v. New Jersey, 637 F.3d 177, 182-83 (3d Cir. 2011). See also Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force--deadly or not-- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  Clearly, here, there is no question that Plaintiff has adequately alleged that a seizure occurred.

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Graham v. Connor, 490 U.S. 386, 396 (989) and Scott v. Harris, 550 U.S. 372, 383 (2007).  Proper application of this objective reasonableness standard "requires careful attention to the facts

9

and circumstances of each particular case, including the
severity of the crime at issue, whether the suspect poses an
immediate threat to the safety of the officers or others, and
whether he is actively resisting arrest or attempting to evade
arrest by flight." Graham v. Connor, 490 U.S. at 396; quoted in
Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir.
1995).  Other factors to be considered include "'the duration of
the [officer's] action, whether the action takes place in the
context of effecting an arrest, the possibility that the suspect
may be armed, and the number of persons with whom the police
officers must contend at one time.'" Couden v. Duffy, 446 F.3d
483, 497 (3d Cir. 2006) (citations omitted).  Ultimately, "the
question is whether the officers' actions are 'objectively
reasonable' in light of the facts and circumstances confronting
them, without regard to their underlying intent or motivation."
Graham, 490 U.S. at 397.

        Here, Plaintiff has simply alleged in conclusory fashion
that Officers Nawroc and Burrows beat him and used excessive
force against him.  This Court is not bound to accept
Plaintiff's characterization of the officers' conduct as
excessive.  And he has failed to allege facts from which this
Court could apply the governing considerations to determine
whether Plaintiff has stated a claim that the use of force was
excessive.  To the contrary, Plaintiff has failed utterly to

describe the nature of the force used against him and the circumstances under which he was arrested, except to note that there appeared to be some type of altercation between himself and Nurse Brady, which may have been ongoing when the police arrived.  That is, he has failed to allege any facts that would raise his right to relief "above a speculative level."  This conclusory claim will be dismissed for failure to state a claim.

C.    The Miranda Claim

Plaintiff seeks damages because Officers Nawroc and Brady did not advise him of his Miranda rights.  Plaintiff does not state whether the officers questioned him or whether he made any statement, other than to assert that Nurse Brady had assaulted him.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court set forth certain procedural safeguards that must be employed, to protect an individual's Fifth Amendment privilege against self-incrimination, whenever authorities take an individual into custody or otherwise deprive him of his freedom in any significant way, and subject him to questioning. According to the Supreme Court,

> the prosecution may not use statements, whether
> exculpatory or inculpatory, stemming from custodial
> interrogation of the defendant unless it demonstrates
> the use of procedural safeguards effective to secure
> the privilege against self-incrimination.  By
> custodial interrogation, we mean questioning initiated
> by law enforcement officers after a person has been

taken into custody or otherwise deprived of his
freedom of action in any significant way.

Miranda v. Arizona, 384 U.S. at 444 (footnote omitted).

To the extent Plaintiff seeks to assert a claim for damages
based directly upon the failure to give a proper Miranda
warning, or questioning or acquisition of a statement in
violation of his Miranda warning rights, he fails to state a
claim.  "[V]iolations of the prophylactic Miranda procedures do
not amount to violations of the Constitution itself.  ...  The
right protected under the Fifth Amendment is the right not to be
compelled to be a witness against oneself in a criminal
prosecution, whereas the 'right to counsel' during the custodial
interrogation recognized in [Miranda] is merely a procedural
safeguard and not a substantive right."  Giuffre v. Bissell, 31
F.3d 1241, 1256 (3d Cir. 1994) (citations omitted).  Thus,
Plaintiff has no free-standing Fifth Amendment right to remain
silent during interrogation.  Nor does Plaintiff have a free-
standing Fifth Amendment claim for denial of the right to
counsel during questioning.  See James v. York County Police
Dept., 160 F.App'x 126, 133 (3d Cir. 2005) (citing Giuffre).  In
addition, a person's Sixth Amendment right to counsel "attaches
only at or after the time that adversary judicial proceedings
have been initiated against him."  Kirby v. Illinois, 406 U.S.
682, 688 (1972) (plurality opinion).  Accordingly, the Miranda

claim for damages will be dismissed with prejudice for failure
to state a claim.  Cf. Gunset v. Marsh, Civil Action No. 12-
4735, 2012 WL 3229145 (D.N.J. Aug. 6, 2012) (dismissing with
prejudice damages claim arising out of alleged Miranda
irregularities during interrogation).

D.   The False Arrest Claim

     Plaintiff re-asserts the false arrest claim, which this
Court previously dismissed with prejudice.  He has alleged no
new facts that would cause this Court to reconsider its prior
decision.  Accordingly, for the reasons stated in this Court's
prior Opinion [14], this claim will be dismissed with prejudice.

E.   State Law Tort Claims

     In the Third Amended Complaint, Plaintiff asserts new
state-law tort claims against all defendants for malicious
prosecution, assault and battery, negligence, and tortious
infliction of emotional distress.

     Pursuant to 28 U.S.C. § 1367(c)(3), where a district court
has dismissed all claims over which it has original
jurisdiction, it may decline to exercise supplemental
jurisdiction over a related state law claim.  Indeed, the Court
of Appeals for the Third Circuit has held that, where all
federal claims are dismissed before trial, "the district court
must decline to decide the pendent state claims unless
considerations of judicial economy, convenience, and fairness to

13

the parties provide an affirmative justification for doing so."
Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted) (alteration in original).  As no such extraordinary circumstances appear to be present, this Court will dismiss all state law claims without prejudice.

V.   CONCLUSION

        For the reasons set forth above, all federal claims will be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.  All state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  No further opportunities to amend will be granted.  An appropriate order follows.


At Camden, New Jersey                    s/ Noel L. Hillman
                                    Noel L. Hillman
                                    United States District Judge

Dated:  October 10, 2014


14